**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>BRUCE STERMAN and LUBA PINCUS,<br><br>Debtors. | **FOR PUBLICATION**<br><br>Case No. 16-10378 (MG) |
| ROBERT GELTZER, as Chapter 7 Trustee of BRUCE STERMAN and LUBA PINCUS<br><br>Plaintiff,<br><br>v.<br><br>OBERLIN COLLEGE, OBERLIN STUDENT COOPERATIVE ASSOCIATION, NELNET, INC., ALEXANDRA STERMAN, and SAMANTHA STERMAN,<br><br>Defendants. | Adv. Pro. Case No. 18-01015 (MG) |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT**

*A P P E A R A N C E S:*

ARCHER & GREINER, P.C.
*Counsel to the Chapter 7 Trustee Robert L. Geltzer*
630 Third Avenue
New York, NY 10017
By:    Allen G, Kadish, Esq.

PAUL MILBAUER, ESQ.
*Counsel to Debtors Bruce Sterman and Luba Pincus
and Defendants Alexandra Sterman and Samantha Sterman*
90 John Street – Suite 313
New York, NY 10038

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

The Chapter 7 Trustee, Robert L. Geltzer (the "Trustee"), seeks to recover as constructive fraudulent transfers amounts paid by the Chapter 7 co-debtors, Luba Pincus and Bruce Sterman (the "Debtors"), to or for the benefit of their two daughters, defendants Alexandra Sterman and Samantha Sterman (the "Defendants"), allegedly for college tuition, books and supplies, and room and board while they were students at Oberlin College. The Trustee and the Defendants filed cross-motions for summary judgment (the "Trustee's Motion," ECF Doc. # 24; the "Defendants' Motion," ECF Doc. # 22 at 11). The Defendants' Motion is supported by the affidavits of debtor Luba Pincus (the "Pincus Affidavit," ECF Doc. # 22 at 1) and debtor Bruce Sterman (the "Sterman Affidavit," ECF Doc. # 22 at 5).

The parties also entered a stipulation of undisputed facts (the "Stipulated Facts," ECF Doc. # 21). The Stipulated Facts indicate that some of the transfers to or for the benefit of Samantha were made while she was a college student *before* she was 21 years old and some were made while she was a college student *after* she was 21 years old. The Stipulated Facts indicate that the transfers to or for the benefit of Alexandra were made *after* she was 21 years old and *had already graduated from college*. According to the Stipulated Facts, since Alexandra graduated college in 2009, she has been "financially independent." (Stipulated Facts ¶ 15.)

The parties limit their cross motions to a request that the Court rule whether the Debtors received "reasonably equivalent value" for the transfers for college tuition and expenses; if the Debtors received reasonably equivalent value, the transfers would not be avoidable as constructive fraudulent transfers even if the Debtors were insolvent at the time of the transfers. There are two questions presented: first, did the Debtors receive reasonably equivalent value for their daughters' college educations and related expenses because their daughters' education will

2

enhance their self-sufficiency; and second, does it matter whether the daughters were younger or older than 21 when the transfers were made?

For the reasons explained below, the Court grants the Trustee's Motion in part and denies it in part with respect to the transfers to or for the benefit of Samantha. The Trustee's Motion is granted with respect to the transfers to or for the benefit of Alexandra, as she was older than 21 and no longer a student when the transfers were made.

## I. BACKGROUND

The Debtors, Luba Pincus and Bruce Sterman, filed a joint chapter 7 petition on February 19, 2016 (the "Petition Date"). (The Stipulated Facts ¶ 2.) The Trustee filed an adversary proceeding to recover allegedly constructively fraudulent transfers made by the Debtors to or for the benefit of their daughters. (*Id.* ¶ 11-12.)[1]

Alexandra attended Oberlin College from 2005-2009; Samantha attended Oberlin College from 2009-2013. (*Id.* ¶ 15-19.) In the six years prior to the Petition Date, the Debtors made several transfers to or for the benefit of their daughters. The parties stipulate that the transfers were made in connection with the Defendants' "college educations at Oberlin College and related expenses, including school books and supplies, meals, campus housing/rent/utilities, transportation and birthday presents." (*Id.* ¶ 12.)

The Stipulated Facts state that Alexandra Sterman reached age 21 on January 12, 2008 and graduated from Oberlin College in 2009. (Stipulated Facts ¶¶ 13 & 14.) Exhibit A to the Complaint (ECF Doc. # 1) indicates that transfers to or for the benefit of Alexandra, totaling

---

[1] The Complaint also seeks to recover conveyances made to Oberlin College, Oberlin Student Cooperative Association, Navient Corporation, and Nelnet, Inc. The Trustee entered into a stipulation dismissing the Complaint against Nelnet, Inc. on September 24, 2018 (ECF Doc. # 30), and has since reached settlement agreements with Oberlin College, Oberlin Student Cooperative Association, and Navient Corporation. (ECF Doc. # 31-33.) Accordingly, the only remaining defendants are Alexandra and Samantha Sterman.

3

$15,675.00, were made between August 13, 2010 and October 13, 2015. Paragraph 12 of the Stipulated Facts states that "[t]he schedules of transfers that are attached to the Complaint as Exhibits A and B accurately describe the transfers to and/or for the benefit of the Defendants that are the subject of the Complaint." Those two exhibits list transfers between 2010-2015. Both the Stipulated Facts and the Pincus Affidavit state that Alexandra attended college between 2005 and 2009, and graduated in 2009, so it is clear under the Stipulated Facts that the transfers to or for the benefit of Alexandra all were made after she was 21 years old and after she graduated from Oberlin. The Pincus Affidavit also makes clear that "[s]ince graduation [Alexandra] has been fully employed, self sufficient and tax paying adult." (Pincus Affidavit ¶ 9.)

The Trustee claims that the transfers are constructively fraudulent. The Trustee seeks to recover $15,675.00 from Alexandra for transfers "while she was of majority age." (Stipulated Facts ¶ 16.) The Trustee seeks to recover $9,952.00 from Samantha; $2,276.00 of those transfers were made "in respect of college tuition and living expenses . . . while she was a minor, and $7,676.00 were made while she was of majority age."[2] (*Id.* ¶ 18.)

For purposes of the summary judgment motions, "the parties have agreed not to put solvency at issue." (Trustee's Motion ¶ 12, ECF Doc. # 11.) Therefore, the sole question is whether the Debtors received reasonably equivalent value for the transfers to or for the benefit of their daughters.[3]

---

[2] Settled New York law recognizes parents' obligation to provide minor children with housing, food, education and healthcare. "[I]t is axiomatic that parents are obligated to provide for their children's necessities, such as food, clothing, shelter, medical care, and education." *In re Michel*, 572 B.R. 463, 475 (Bankr. E.D.N.Y. 2017) (quoting *In re Akanmu*, 502 B.R. 124, 132 (Bankr. E.D.N.Y. 2013). The age of majority in New York is 21 years old. *Columbia Cty. Dep't of Soc. Servs. ex rel. William O v. Richard O*, 262 A.D.2d 913, 914, 692 N.Y.S.2d 496, 498 (1999) ("As a general rule, parents are required to support a child until the child attains the age of 21 (*see,* Family Ct Act § 413 [1][a] ).").

[3] The Complaint also includes a claim for unjust enrichment. (Complaint ¶¶ 45-49.) The parties' summary judgment papers are silent on the unjust enrichment claim and only consider whether the conveyances were constructively fraudulent. Accordingly, the unjust enrichment claim is not presently before the Court.

## II.   LEGAL STANDARD

### A. Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7056, states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To successfully assert that a fact is not in dispute or cannot be disputed, a movant must:

> cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or show[] that the material cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. § 56(c)(1).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [the movant's] right to judgment as a matter of law." *In re Soliman*, 515 B.R. 179, 185 (Bankr. S.D.N.Y. 2014), (citing *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir. 1995)).

### B. Fraudulent Transfers

The Trustee claims that the transfers were constructively fraudulent pursuant to Bankruptcy Code § 544. Section 544 provides that the trustee may avoid a transfer of a debtor's property interest that is voidable under state law by a creditor holding an allowed unsecured claim. *See* 11 U.S.C. § 544(b)(1); *see also Banner v. Lindsay (In re Lindsay)*, Adv. Proc. No. 08-9091, 2010 WL 1780065, at *5 (Bankr. S.D.N.Y. 2010). The Trustee alleges that the transfers in question were fraudulent under the New York Debtor and Creditor Law ("NYDCL").

Under the NYDCL, a conveyance is fraudulent if it is incurred without "fair consideration." NYDCL §§ 273 and 275. "Fair consideration" is defined by the NYDCL as follows:

> fair consideration is given for property, or obligation,
> a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
> b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

NYDCL § 272.

Ordinarily, the plaintiff bears the burden of proving a lack of fair consideration but where, as here, "the facts regarding the nature of the consideration are within the transferee's control, the burden of proving the fairness of consideration shifts to the transferee." *Ackerman v. Ventimiglia (In re Ventimiglia)*, 362 B.R. 71 (Bankr. E.D.N.Y. 2007).

The Trustee also argues that the conveyances were constructively fraudulent under Bankruptcy Code § 548. Under that provision, a trustee may avoid a transfer made by the debtor within two years of the filing of the petition if the debtor did not receive "reasonably equivalent value" in the exchange. 11 U.S.C. § 548(a)(1)(b). The Bankruptcy Code defines the term "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C.A. § 548(d)(2)(A). The Bankruptcy Code does not define the term "reasonably equivalent value." *In re Gonzalez*, 342 B.R. 165, 169 (Bankr. S.D.N.Y. 2006). Courts have found that the term does not require the exchange to be "mathematically equal" but "[p]urely emotional benefits, such as love and affection" will not suffice. *Id.* at 169, 173. Both direct and indirect benefits flowing to the debtor may be considered. *In re Akanmu*, 502 B.R.

124, 130–31 (Bankr. E.D.N.Y. 2013) (quoting *Liquidation Trust v. Daimler AG (In re Old CarCo LLC)*, No. 11 Civ. 5039(DLC), 2011 WL 5865193, at *7 (S.D.N.Y. Nov. 22, 2011)). "Fair consideration" under the NYDCL and "reasonably equivalent value" under section 548(a)(1)(B)(i) have substantially the same meaning. *Id.* (citing *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 110 (Bankr.S.D.N.Y.2011)).[4]

### III.    DISCUSSION

The conveyances in this case must be broken down into three categories: (A) transfers made for education-related expenses to or for the benefit of both daughters after they reached the age of majority so that they could attend Oberlin College,[5] (B) transfers made for education-related expenses to or for the benefit of Samantha when she was a minor, and (C) transfers to Alexandra after she graduated from college. Summary judgment should be granted to the Trustee with respect to categories (A) and (C) and denied with respect to category (B). Summary judgment should be denied to Alexandra and Samantha with respect to category (A) and (C) and granted to Samantha with respect to category (B).[6]

#### A. The Education Related Transfers Made after the Defendants Reached the Age of Majority

There is a developing body of law regarding whether college tuition payments made by parents for the education of their children after they reach the age of majority are constructively

---

[4]    Both section 548 of the Bankruptcy Code and the NYDCL require that the trustee establish that the Debtors were insolvent when the transfers were made. Whether the Debtors were insolvent at the times of the transfers remains unresolved.

[5]    All the challenged transfers to or for the benefit of Alexandra were made *after* reached the age of majority (21) and *after* she graduated from college in 2009, and while she was working and "financially independent." It is unclear how these transfers after Alexandra graduated were made so that Alexandra could attend Oberlin College from which she had already graduated. In any event, as explained below, the Court concludes that the Debtors did not receive reasonably equivalent value for transfers made to or for the benefit of Alexandra or Samantha after they reached the age of 21.

[6]    The Complaint also seeks to recover $700 in cash gifts to Alexandra and Samantha. The Stipulated Facts do not provide any details about those gifts. Nothing in this Opinion addresses the issues concerning the cash gifts.

fraudulent.  The Trustee points to several decisions where courts held that pre-petition college tuition payments are avoidable because the debtor parents did not receive reasonably equivalent value in exchange for the tuition payments.  *See Boscarino v. Bd. of Trs. of Conn. State Univ. Sys. (In re Knight)*, 2017 WL 4410455 (Bankr. D. Conn. 2017); *Roach v. Skidmore Coll. (Matter of Dunston),* 566 B.R. 624, 636-37 (Bankr. S.D. Ga. 2017); *Gold v. Marquette Univ. (In re Leonard)*, 454 B.R. 444 (Bankr. E.D. Mich. 2011); *Lindsay*, 2010 WL 1780065.  The Defendants counter by pointing to case law holding that parents did receive reasonably equivalent value in exchange for college tuition payments.  *See Lewis v. Penn. St. Univ. (In re Lewis)*, 574 B.R. 536, 541 (Bankr. E.D. Pa. 2017); *DeGiacomo v. Sacred Heart Univ., Inc. (In re Palladino)*, 556 B.R. 10, 16 (Bankr. D. Mass. 2016); *Trizechahn Gateway, LLC v. Oberdick (In re Oberdick)*, 490 B.R. 687, 712 (Bankr. W. D. Pa. 2013); *Sikirica v. Cohen (In re Cohen)*, 2012 WL 5360956, at *10 (Bankr. W. D. Pa. 2012).[7]

Whether insolvent parents receive reasonably equivalent value for college tuition payments made for the benefit of their adult children is a culturally and socially charged issue.  With the greatest respect for the courts that have found reasonably equivalent value for such tuition payments, the Court is constrained by the language of the Bankruptcy Code and the NYDCL—those statutes define the terms "value" and "fair consideration" to require either the transfer of property or the satisfaction of an antecedent debt in return for an insolvent debtor's payments.  11 U.S.C.A. § 548(d)(2)(A); NYDCL § 272.  The Debtors received neither in this

---

[7] The recent decision by the district court in *Pergament v. Brooklyn Law School*, 18-CV-2204 (ARR), 2018 WL 6182502 (E.D.N.Y. November 27, 2018), is inapposite.  The court reversed the bankruptcy court's grant of summary judgment on constructive fraudulent transfer claims in favor of three universities that received tuition payments from a chapter 7 debtor for two of his children.  The issue addressed by the district court was whether the colleges were initial transferees, or subsequent transferees that took the tuition payments in good faith.  The issue whether the debtor received reasonably equivalent value for the tuition payments is not addressed.

case with respect to transfers made to or for the benefit of Alexandra and Samantha after they reached the age of majority—21 years old in New York State.[8]

Alexandra and Samantha argue that their parents received reasonably equivalent value because the transfers made after they were adults increased the likelihood that they would be self-sufficient. (Pincus Affidavit ¶ 23.) The Massachusetts bankruptcy court reached that conclusion in *In re Palladino*, 556 B.R. at 16. In that case, the debtors made pre-petition tuition payments so that their daughter could attend college. *Id.* at 12. The Trustee attempted to set aside the tuition payments on a theory of constructive fraud. *Id.* at 13. The court ruled against the trustee because it found that the parents received an economic benefit from the tuition payments. The court stated:

> I find that the [debtors] paid [the college] because they believed that a financially self-sufficient daughter offered them an economic benefit and that a college degree would directly contribute to financial self-sufficiency . . . A parent can reasonably assume that paying for a child to obtain an undergraduate degree will enhance the financial well-being of the child which in turn will confer an economic benefit on the parent. This, it seems to me, constitutes a *quid pro quo* that is reasonable and reasonable equivalence is all that is required.

*Id.* at 16.

The court's conclusion is supported by studies on the value of a college education to a family. *See* Brief *Amici Curiae* of American Council on Education, and 19 Other Education Associations in Support of Sacred Heart University, Inc. and Affirmance, at 4-7, *Degiacomo v.*

---

[8]  State law determines the age of majority. It defines the age below which parents are required to provide financial support for their children. The State law requirement to provide financial support establishes the antecedent debt that is satisfied by the payment for tuition and related expenses. As already indicated, New York law sets the age of majority at 21. *See supra* n.3. *In re Knight*, 2017 WL 4410455, one of the best reasoned decisions concluding that tuition payments for adult children does not provide reasonably equivalent value arose from transfers for college tuition for a child over 18 years of age in Connecticut. Unlike New York which defines the age of majority as 21, Connecticut defines the age of majority as 18. *See Spencer v. Spencer*, 10 N.Y.3d 60, 63 (2008).

*Sacred Heart University*, No. 17-1334 (1st Cir. Jul. 27, 2017) (citing studies showing that a college degree improves an individual's chances of gaining employment, increases their average income, and decreases the chances that they will live with their parents).

The Court does not question whether the Debtors' decision to send money to or for the benefit of their adult daughters for their college education was economically prudent. But, unfortunately, the economic "benefit" identified by the Defendants does not constitute "value" under the NYDCL or the Bankruptcy Code.

In *In re Lindsay*, 2010 WL 1780065, Judge Morris ordered avoidance, as constructively fraudulent transfers, of college tuition payments made for the benefit of the debtors' son. It is unclear whether the tuition payments were made before or after the son turned 21. The opinion only refers to the "adult son" living with his parents. *Id.* at 1. The court rejected the defendants' argument that a legal obligation to pay the tuition existed.[9] The defendants argued that they had a legal and moral obligation to pay for their child's education. *Id.* at *9. But the defendants did not point to any authority supporting these arguments. *Id.* ("The Court is not aware of any law requiring a parent to pay for a child's college education. Defendants do not offer any authority in support of their argument that a judgment debtor's 'moral obligation' to pay for a child's college education is a defense to [the NYDCL]."). To the extent that *Lindsay* is read to require avoidance for tuition and education-related expenses for adult children, this Court agrees with the decision. *See also Knight*, 2017 WL 4410455, at *5 ("While such support is unquestionably

---

[9] *In re Lindsay*, No. 06-36352 (CGM), 2010 WL 1780065, at *9 (Bankr. S.D.N.Y. May 4, 2010) ("Defendants admit that they transferred proceeds of certain assets sales to a university for their son's education. The Court notes at the outset that Defendants produce no evidence of their alleged legal obligation to pay their son's tuition, such as a promissory note in favor of the university or a lender. The Court is not aware of any law requiring a parent to pay for a child's college education.").

10

admirable . . . it is undisputed that the Debtor had no legal obligation [to] pay for her adult son's college education.").[10]

The Defendants here also argue that the Debtors received "psychic and other intangible benefits" from the conveyances. (Defendants' Opposition Brief, at 12.) The Defendants explain:

> The debtors benefited when they paid rent by knowing their daughters had a roof over their heads on campus. The debtors benefited when they paid utilities by knowing their daughters has [sic] heat and light to read their books on campus. The debtors benefited when they paid health insurance by knowing their daughters could receive medical care. The debtors benefitted when they paid for transportation to and from Oberlin by knowing their daughters were travelling safely to and from campus.

(*Id.* at 11.) The Defendants support this argument by citing to *In re Gonzalez*, 342 B.R. 165. In that case, the debtor had a son out of wedlock with a woman named Karen. *Id.* at 167. Although he had no legal obligation to do so, the debtor made regular monthly payments on a mortgage for the home where his son and Karen lived. *Id.* The debtor claimed "that he made the payments to support his son . . . and because Karen was unable to keep current on the note and could not otherwise provide a proper home for [their son]." *Id.* The debtor spent "all of his weekends" at the home with Karen and his son. *Id.* at 167. The trustee argued that the mortgage payments made by the debtor were avoidable because they were constructively fraudulent. *Id.* at 168. The court ruled against the trustee. The Defendants correctly point out that the *Gonzalez* court's ruling was based in part because the debtor received "psychic" and "other intangible benefits" from the mortgage payments. *Id.* at 172. The Defendants ignore, however, that the court found that these benefits were "in addition to" the debtors' use of the property on a weekly basis. *Id.*

---

[10] To the extent that *Lindsay* is read to require avoidance for tuition and education-related expenses for adult children, I agree with the decision. As explained in the next section of this Opinion, however, I reach a different result for transfers for tuition and education-related expenses for minor children, which I conclude may be supported by reasonably equivalent value.

11

Thus, *Gonzalez* does not stand for the proposition that "psychic" benefits alone constitute reasonably equivalent value, as the Defendants portend.

Accordingly, the Trustee's summary judgment motion with respect to the transfers made after Alexandra and Samantha reached the age of 21 is granted**.**

### B.  Education Related Conveyances before Samantha Reached the Age of Majority

The Stipulated Facts indicate that $2,276.00 of the transfers to or for the benefit of Samantha were made while she was a minor.  (Stipulated Facts ¶ 18.)  The Stipulated Facts also state that the transfers were made for her "college education[ ] at Oberlin College and related expenses, including school books and supplies, meals, campus housing/rent/utilities, transportation and birthday presents."  (*Id.* ¶ 12.)  While the case law does not *require* that parents pay for college tuition for a minor child at a private college to satisfy the parents' obligation to provide a minor child with education, the issue rather is whether the parents receive reasonably equivalent value when they do pay for such an education.  On this issue, the Court agrees with Chief Judge Craig, writing in *In re Akkanmu:*

> The Trustee argues that New York law does not require the Debtors to provide parochial or private school education, and that the Debtors could have satisfied their obligation at no cost by sending the children to public school.  This argument misses the point.  The fact that the Debtors chose to educate their children in parochial school rather than public school, arguably exceeding the "minimum standard of care," does not change the fact that, by doing so, they satisfied their legal obligation to educate their children, thereby receiving reasonably equivalent value and fair consideration.  It is irrelevant to this determination whether the Debtors could have spent less on the children's education, or, for that matter, on their clothing, food, or shelter.  To hold otherwise would permit a trustee to scrutinize debtors' expenditures for their children's benefit, and seek to recover from the vendor if, in the trustee's judgment, the expenditure was not reasonably necessary, or if the good or service could have been obtained at a lower price, or at no cost, elsewhere.  For example, a trustee could seek to avoid a debtor's payments to a restaurant for a meal purchased for the debtor's child, or payments

> to a department store for clothing purchased for the child, on a theory that adequate food or clothing could have been obtained at lower cost. A trustee could sue the vendor to recover the cost of a computer or other electronic device purchased pre-petition by a debtor for his child, on the theory that the item was not reasonably necessary. . . . . The absurdity of this scenario is obvious.
>
> A trustee is not granted veto power over a debtor's personal decisions, at least with respect to pre-petition expenditures. "[A] trustee's powers are not limitless." *In re Thompson*, 253 B.R. 823, 825 (Bankr. N.D. Ohio 2000). "[T]he 'Bankruptcy Code confers absolutely no power upon the trustee to make decisions concerning how a debtor manages his everyday affairs such as where the debtor will live or work.'" *French v. Miller (In re Miller)*, 247 B.R. 704, 709 (Bankr. N.D. Ohio 2000) (determining whether a chapter 7 trustee may waive the attorney-client privilege of a debtor). This is equally applicable to a debtor's decisions concerning where and how to educate his children.

*In re Akanmu*, 502 B.R. at 132–33; *Graves v. Graves*, 675 N.Y.S.2d 843, 846-47 (Sup. Ct. 1998) (requiring father to pay for child's college education).

Therefore, barring facts showing egregious conduct by debtors (which has not been shown here with respect to these Debtors),[11] the Court concludes that Samantha is entitled to summary judgment dismissing the portion of the Trustee's claim seeking to recover $2,276.00 of the transfers to or for the benefit of Samantha made while she was a minor; the Trustee's cross motion to recover this portion of the transfers is denied.

### C. Transfers to Alexandra After She Graduated from College

The Court has already concluded in Section A above that the Debtors did not receive reasonably equivalent value in return for the transfers made to or for the benefit of Alexandra and Samantha after they were 21. The Stipulated Facts show that all the transfers to or for the benefit of Alexandra were *after* she graduated college, *after* she reached the age of 21, and *after*

---

[11] One could postulate egregious facts—such as a distressed debtor making a lump sum transfer of several years of tuition payments and expected related expenses before filing a bankruptcy case—that could lead a court to conclude that the transfer is avoidable as an actual or constructive fraudulent transfer.

13

she was financially independent. Even if any argument could support paying college tuition and related expenses for an adult child while still in school, if the student started college while still a minor, no argument has been made that would immunize from avoidance transfers made after graduation once the adult child has become financially independent.

## IV.    CONCLUSION

For the reasons explained above, the Court concludes that transfers to or for the benefit of Alexandra and Samantha after they reached the age of 21 for college tuition and related expenses are avoidable as constructive fraudulent transfers if the Debtors were insolvent at the times the transfers were made. On the other hand, on the record before the Court, transfers to or for the benefit of Samantha while she was a minor for college tuition and related expenses were supported by reasonably equivalent value and, therefore, are not avoidable.

**IT IS SO ORDERED.**

Dated:    December 4, 2018
        New York, New York

                                              *____Martin Glenn_____*
                                                MARTIN GLENN
                                          United States Bankruptcy Judge